David C. Parisi (162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)

Joseph H. Malley (pro hac vice pending)
malleylaw@gmail.com
LAW OFFICES OF JOSEPH H. MALLEY P.C
1045 N. Zang Boulevard
Dallas, Texas 75208
(214) 943-6100 (telephone)
(214) 943-6170  (facsimile)

*Attorneys for Plaintiffs, on their own
behalf, and behalf of all others similarly situated*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| MICHELLE HERNANDEZ, ASHLEY SALINAS, JOHN RAMIREZ, and ANDRE RUFUS, individuals and on behalf of a class of similarly situated individuals,<br><br>            Plaintiffs,<br><br>      v.<br><br>TALKATONE, INC., a Delaware corporation, TALKATONE, LLC, a Delaware limited liability company, and OOMA, INC., a Delaware corporation, and DOES 1-100, inclusive,<br><br>            Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1)  VIOLATION OF 47 U.S.C. § 227**<br><br>**JURY DEMAND** |

**CLASS ACTION COMPLAINT**

Michelle Hernandez, Ashley Salinas, John Ramirez and Andre Rufus ("Plaintiffs") bring this class action complaint individually and on behalf of all others similarly situated, and, through their undersigned counsels, complain against Defendants Talkatone, Inc., Talkatone, LLC (collectively "Talkatone"), Ooma, Inc. ("Ooma"), and Does 1 to 100 (collectively, "Defendants") to stop their practice of making unsolicited text message calls to cellular

1   telephones, and to obtain redress for all persons injured by Defendants' conduct. Plaintiffs, for

2   their class action complaint, allege as follows upon personal knowledge as to themselves and

3   their own acts and experiences, and, as to all other matters, upon information and belief, based

4   on, among other things, the investigation conducted by their attorneys.

5                                                 **Introduction**

6          1.      In a misguided effort to promote their mobile application (i.e., "app"), Defendants

7   engaged in an especially invasive form of marketing: the transmission of unauthorized

8   advertisements in the form of invitational text message calls to the cellular telephones of

9   unwitting consumers throughout the nation.

10         2.      By transmitting these unauthorized text message calls (hereinafter, "wireless

11  spam"), Defendants have violated consumers' statutory rights and have caused consumers actual

12  harm, not only because consumers were subjected to the aggravation that necessarily

13  accompanies wireless spam, but also because consumers frequently have to pay their cell phone

14  service providers for the receipt of such wireless spam.

15         3.      In order to redress these injuries, Plaintiffs, on behalf of themselves and a

16  nationwide class of similarly situated individuals, bring suit under the Telephone Consumer

17  Protection Act (47 U.S.C. § 227) (the "TCPA"), which prohibits unsolicited voice and text calls

18  to cell phones.

19         4.      On behalf of the class, Plaintiffs seek an injunction requiring Defendants to cease

20  all wireless spam activities and an award of statutory damages to the class members, together

21  with costs and reasonable attorneys' fees California Code of Civil Procedure section 1021.5.

22                                                 **Parties**

23         5.      Plaintiff Michelle Hernandez is a resident of Texas.

24         6.      Plaintiff Ashley Salinas is a resident of Texas.

25         7.      Plaintiff John Ramirez is a resident of Texas.

26         8.      Plaintiff Andre Rufus is a resident of Texas.

27         9.      Defendant Talkatone, Inc., is a Delaware corporation with its principal place of

28  business in Palo Alto, California. Talkatone lists its address with the California Secretary of State

Class Action Complaint                              2

as 1971 Landings Drive, Mountain View, California 94043. Talkatone does business throughout the United States, including in this District.

10.      Defendant Talkatone, LLC is a Delaware limited liability company, with its principal place of business in Palo Alto, California. Talkatone, LLC lists its address with the California Secretary of State as 1880 Embarcardero Road, Palo Alto, California  94303. Talkatone, LLC does business throughout the United States, including in this District.

11.      Defendant Ooma is a Delaware corporation with its principal place of business in Palo Alto, California. Talkatone lists its address with the California Secretary of State as 1880 Embarcardero Road, Palo Alto, California  94303. Ooma does business throughout the United States, including in this District.

12.      Ooma is a consumer telecommunications company.  Pursuant to Ooma's Amendment No. 1 to Form S-1 Registration Statement filed with the SEC on July 6, 2015, Ooma acquired Talkatone, Inc. in May 2014.  Pursuant to this same document, Talkatone, LLC is a wholly owned subsidiary of Ooma.

13.      Plaintiffs are currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 100, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiffs are informed and believes and based thereon alleges that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by plaintiffs.

14.      Plaintiffs are informed and believe and based thereon alleges that all defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants;

however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

15. All Defendants, including Does 1 through 100, are collectively referred to as "Defendants."

16. Whenever this complaint refers to any act of Defendants, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

**Jurisdiction and Venue**

17. The Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under 47 U.S.C. § 227.

18. This Court has personal jurisdiction over Defendants because Defendants did business in California, are registered to do business in California, were domiciled in California, and certain of the acts giving rise to the claims alleged herein were committed in California.

19. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), as the text message calls at issue were transmitted by Defendants from this District.

**Intradistrict Assignment**

20. A substantial part of the events which give rise to the claim occurred in Santa Clara County. Under Local Rule 3-2(c), (e), this civil action should be assigned to the San Jose division of the Northern District of California.

**Common Allegations of Fact**

21. Talkatone is a smartphone app that enables users to make free phone calls, SMS texting via WiFi or cellular connection, and other social services. The Talkatone App is available as an iOS app in the iTunes app store, an android app, on Google Play, and on the Kindle Fire.

22. Talkatone fails to provide notice, or obtain consent, that Talkatone automatically sends text calls to the telephone numbers stored in the contacts lists of the Talkatone users' cellular telephones—without the users' consent, authority, or involvement. Rather, Talkatone advised its users that the app permitted them to affirmatively invite their contacts to join Talkatone:

Invite your Contacts to join Talkatone . . .

We encourage our users to invite others to Talkatone, since Talkatone to Talkatone calls and texts are free.

You can send Talkatone invitations to your contacts by following these instructions: On Talkatone, tap on the Contacts icon, then tap on the Contact you wish to invite. Here you should see the legend "Invite to Talkatone", tap and you are done!

Video Tutorial: http://bit.do/tktninvite

Talkatone, *Knowledge Base Home › Talkatone v4.1+ › Invite your Contacts to join Talkatone*, http://support.talkatone.com/customer/portal/articles/1908072-invite-your-contacts-to-join-talkatone (last updated August 6, 2015). Users reviewing this communication would reasonably conclude that Talkatone's app required their consent, authority, and involvement to transmit invitations to use Talkatone's app to the telephone numbers stored in the contacts lists of the Talkatone users' cellular telephones.

23.     Defendants' practice of using users' cell phones to send text calls to the telephone numbers stored in the contacts lists of their cellular telephones in order to advertise Defendants' business and/or app is commonly referred to as "growth hacking." Growth hacking is the latest marketing industry euphemism for unauthorized advertising or spam, and frequently involves a continuous unsolicited invitational process or "viral loop" designed to increase adoption among consumers of the promoted product or service at an ever-increasing rate. *See, e.g.*, ValleyWag, *Path Is Racking Up a $500,000 Per Month Spam Bill*, at http://valleywag.gawker.com/path-is-racking-up-a-500-000-per-month-spam-bill-589105276.

24.     The Talkatone App marketing campaign at issue in this case is the very definition of growth hacking—it involves the transmission of unsolicited invitational text message ads sent by Defendants to lists of unwitting consumers' cellular telephone numbers that Defendants obtained from the contact lists in their users' cellular telephones and sent to Defendants' API platform via an automated process, and then stored by Defendants prior to transmission as part of a process lacking any human intervention. Defendants' hope and expectation for this scheme is the same hope and expectation of all viral spammers: that at least some of the recipients of their unsolicited invitational text message advertisement respond favorably and agree to download the

Talkatone App and then repeat this process, thereby growing Defendants' user base exponentially.

25.     When the Defendants perpetuated the text message growth hacking scheme at issue in this case, they did so utilizing the same text messaging platform that has been repeatedly commandeered by other unscrupulous Defendants to conduct traditional mass spamming campaigns of the variety the TCPA has consistently proscribed for years. *See*, *e.g.*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, ¶¶107-22 (July 10, 2015) ("2015 Order"); *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C. Rcd 15391, 15392 n.5 (2012); *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd 559, 566-67 (2008) ("2008 Order").

26.     Unlike more conventional advertisements, wireless spam invades privacy and can actually cost its recipients money, because many cellular phone users must pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

27.     Over the course of an extended period prior to the commencement of this action, Defendants and their agents directed the mass transmission of wireless spam to the cell phones of the proposed Class of persons they hoped would become potential customers.

28.     Upon information and belief, Defendants sent similar transmissions of wireless spam to a list of cellular telephone numbers on a mass basis.

29.     At no time did Plaintiffs or other members of the proposed Class consent to the receipt of any other wireless spam text messages from Defendants

**Plaintiffs' Individual Allegations**

30.     Based on information and belief, Plaintiffs understand that in or about July and/or August 2015, an individual they know named Mr. Hernandez signed up for the Talkatone App twice, once using his email address and once using the email address of a friend, Ms. Gonzalez.

31.     Based on information and belief, the cell phone numbers for Plaintiffs Michelle Hernandez, Ashley Salinas, John Ramirez and Andre Rufus are in the contacts list for either Mr.

1  Hernandez and/or Ms. Gonzalez.

2      32.     Each time after Mr. Hernandez signed up with Talkatone, Defendants' app

3  automatically uploaded the list of Mr. Hernandez's or Ms. Gonzalez's contact mobile phone

4  numbers – instantaneously and without any human intervention – in order to cause text messages

5  to be sent to phone numbers on such lists. On information and belief, such acts occurred to other

6  subscribers of Defendant's Talkatone App.

7      33.     In August 2015, Plaintiffs' cellular telephones rang, indicating that a text call was

8  being received. The verbiage within Defendants' text was deceptive, addressed to "Hi Friend" or

9  "Hi [Plaintiff's name]" and falsely appearing to have been written by either Mr. Hernandez or

10  Ms. Gonzalez. The texts were identical or substantially similar to this:

11
12
13          "Hi Friend,
           I use Talkatone to call/text any number in the US & Canada
14         without using my cell minutes. Get it at tktn.at.
                                - [Redacted] Hernandez"
15

16      34.     In one instance, Plaintiff Ashley Salinas received this text message:

17
18          "Hi Ashley,
           I use Talkatone to call/text any number in the US & Canada
19         without using my cell minutes. Get it at tktn.at.
                                - [Redacted] Gonzalez"
20
21

22      35.     Defendants transmitted the above text messages *en masse* to a list of telephone

23  numbers that Defendants harvested from the contact list in Mr. Hernandez's and/or Ms.

24  Gonzalez's cellular phone through an automated process and then immediately thereafter

25  uploaded into Defendants' text messaging platform for transmission.

26      36.     Defendants' app, in collaboration with Defendants' API platform, is intended to,

27  and does, automatically generate text messages to send to mobile devices using an identical and

28  internally preprogrammed text message script.

37.     The process utilized to transmit the subject text messages was preprogrammed by Defendants to automatically accept Defendants' provided list of phone numbers and then to send Defendants' invitational text message to each phone number on such list without human intervention. The invitational text messages are not typed by a human and are not sent manually from one human to another human.

38.     Defendants used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to send these text calls to Plaintiffs.

39.     Defendants' calls were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A).

40.     Defendants' text calls were sent to telephone numbers assigned to a cellular telephone service pursuant to 47 U.S.C. § 227(b)(1).

41.     Plaintiffs were in no way involved with the physical transfer of telephone numbers to Defendants' list, were in no way involved with the transmission of the text messages, were not involved in the drafting of the text messages, do not see the text messages before they are sent, and do not know when they are sent. The entire process of sending the invitational text messages is automated and performed without any human intervention as part of a technically complex and fully automated system involving Defendants' system.

42.     At no time did Plaintiffs consent to the receipt of the text message identified above or any other such wireless spam from Defendants.

43.     Plaintiffs were not subscribers of Defendants' app and never provided any personal information, including their cellular telephone number, to Defendants for any purpose whatsoever, and were not provided an opportunity to opt-out from Defendants' text calls.

**Class Certification Allegations**

44.     **Class Definition:** Plaintiffs seek to certify a class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). Plaintiffs seek certification on behalf of themselves and of the following class (collectively, the "Class"):

> All persons in the United States and its territories who received one (1) or more text messages from Defendants which invited the recipient to use the Talkatone App and where there is no evidence

the recipient provided prior express consent for Defendants to send such text message(s).

Excluded from the class are the Defendants, their employees, officers, directors, agents, legal representatives, heirs, assigns, successors, individual or corporate entities acting within a partnership, joint venture, trust, association, union, subsidiaries, whether wholly or partially owned, divisions, whether incorporated or not, affiliates, branches, joint ventures, franchises, operations under assumed names, websites, and entities over which Defendants' exercise supervision or control, or group of individuals associated in fact, although not a legal entity, or other legal entity, in addition to Plaintiffs' legal counsel, employees, and their immediate family, the judicial officers and their immediate family, and associated court staff assigned to this case, and all persons within the third degree of consanguinity, to any such persons.

45.    Plaintiffs are members of the Class they seek to represent.

46.    Plaintiffs reserve the right to revise the definition of the Class based on facts they learn as litigation progresses.

47.    The members of the Class can be reasonably identified using information that is kept by Defendants in the usual course of business and/or is in Defendants' control. The calls in controversy can be identified through, e.g., ministerial review of the recordings at issue.

48.    **Class Numerosity:** The exact number of Class members is unknown and is not available to Plaintiffs at this time, but Plaintiffs believe this number exceeds tens of thousands, if not millions, making joinder impractical and exceeding the minimum needed to establish numerosity.

49.    **Class Commonality:** Common questions of fact and law exist as to the class claims of Plaintiffs and all other members of the Class and predominate over the questions affecting only individual members of the class. Identification of the individuals who qualify as a Class member will be sufficient to establish liability to that Class member. Common questions for the Class include, but are not limited to the following:

(a)    Did Defendants and/or their agents send one or more text messages to the Class?

(b)    Did the text messages distributed by Defendants violate the TCPA?

(c)     Did Defendants and/or their agents use an automatic telephone dialing system to transmit the text messages at issue?

(d)     Did the text messages at issue constitute a prerecorded or artificial voice message?

(e)     Are the Class members entitled to treble damages based on the willfulness of Defendants conduct?

(f)     Should Defendants be enjoined from engaging in such conduct?

The factual and legal basis of Defendants' liability to Plaintiffs and to the other Class members are the same and resulted in injury to Plaintiffs and all of the other Class members. Plaintiffs and the other Class members have all suffered harm and damages as a result of Defendants' wrongful conduct.

50.     **Typicality:** Plaintiffs' claims are typical of the claims of the other Class members. Plaintiffs are not different in any relevant way from any other Class members, and the relief they seek is common to the Class.

51.     **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the other Class members: their interests do not conflict with their interests. Plaintiffs have suffered damages and injury in their own capacity from the acts alleged herein, and are ready, willing, and able, to serve as representatives of the Class. Plaintiffs' have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest that might cause them not to vigorously pursue this action.

52.     **Predominance and Superiority:** The Class alleged in this Complaint is appropriate for certification under Rule 23 because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Individual Class members are unlikely to be aware of their rights and are not likely to be in a position (either through experience or financially) to commence individual litigation against Defendants. The damages suffered by each individual class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible

for class members to individually obtain effective relief from Defendants' misconduct. Even if class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Class certification is superior to multiple individual actions or piecemeal litigation because it will conserve the resources of the courts and the litigants, and promote consistency and efficiency of adjudication.

53.     **Generally Applicable Policies:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. The policies of the Defendants challenged herein apply and affect members of the class uniformly, and Plaintiffs' challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiffs.

54.     **Injunctive Relief is Appropriate:** Based on information and belief, Defendants and Agents continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and class members for which they have no adequate remedy at law.

**FIRST CAUSE OF ACTION:**
**Violation of the TCPA Against All Defendants by Plaintiffs Individually**
**and on behalf of the Class**

55.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

56.     Defendants made unsolicited and unauthorized commercial text calls, to the wireless telephone numbers of Plaintiffs and the other members of the Class. Each such text message call was made using equipment that had the capacity at the time the calls were placed to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.

57.     These text calls were made *en masse* through the use of an automated system

operated by Defendants whereby the messages were sent without human intervention, and without the prior express consent of the Plaintiffs or the other members of the Class. The system used by Defendants constitutes an automated telephone dialing system under 47 U.S.C. § 227(a)(1). This system is an ATDS because it is capable of (1) loading and storing more than one telephone number into a list of numbers; (2) assembling text messages and/or text calls by inserting variables (such as a user's name) into a text message with a pre-determined message without further human intervention; and (3) transmitting such text messages and/or text calls to the telephone numbers on such list without further human intervention.

58.     Plaintiffs and the other Class members are not users of the Talkatone App, and they do not have any consensual relationship with Defendants. They did not consent to Defendants' text calls to their cellular telephones.

59.     Defendants have therefore violated the TCPA under 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, the members of the Class have had their privacy rights violated, have suffered statutory and actual damages and, under section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA. Because Defendants had actual or constructive knowledge that Plaintiffs and the Class did not consent to the receipt of the aforementioned wireless spam, the Court should, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiffs and the other members of the Class.

60.     Plaintiffs, on their own behalf, and behalf of the other Class members, seek to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(b)(3), against Defendants. Plaintiffs bring this action as private attorneys general, and to vindicate and enforce an important right affecting the public interest. Plaintiffs are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

WHEREFORE, Plaintiffs prays that the Court enter judgment and orders in his favor and against Defendants as follows:

a.     An order certifying the Class defined above, directing that this case proceed as a

1   class action, and appointing Plaintiffs and their counsel to represent the Class;

2   b.     Judgment against Defendants, and in favor of Plaintiffs and the other Class members in the amount of $1,500 per violation of the TCPA as proven at trial;

3   d.     Equitable and injunctive relief, including injunctions enjoining further violations of the TCPA, including further wireless spam activity;

4

5   e.     An order granting costs and reasonable attorneys' fees; and

6   f.     Such other and further relief as this Court may deem fair, just, and appropriate.

7   Dated: August 13, 2015     By: _____

8   David C. Parisi (162248)
Suzanne Havens Beckman (188814)

9   PARISI & HAVENS LLP
212 Marine Street, Suite 100

10   Santa Monica, California 90405
(818) 990-1299 (telephone)

11   (818) 501-7852 (facsimile)
dcparisi@parisihavens.com

12   shavens@parisihavens.com

13   Ethan Preston (263295)
PRESTON LAW OFFICES

14   4054 McKinney Avenue, Suite 310
Dallas, Texas 75204

15   (972) 564-8340 (telephone)
(866) 509-1197 (facsimile)

16   ep@eplaw.us

17   Joseph H. Malley (not admitted in California)
LAW OFFICES OF JOSEPH H. MALLEY P.C

18   1045 N. Zang Boulevard
Dallas, Texas 75208

19   (214) 943-6100 (telephone)
(214) 943-6170  (facsimile)

20   malleylaw@gmail.com

21   *Attorneys for Plaintiffs, on their own behalf, and behalf of all others similarly situated*

22

23

24

25

26

27

28

1

## JURY TRIAL DEMAND

2

Plaintiffs hereby demands a trial by jury of all issues so triable.

3

4      Dated: August 13, 2015              By: _____

5                                          David C. Parisi (162248)
                                           Suzanne Havens Beckman (188814)
6                                          PARISI & HAVENS LLP
                                           212 Marine Street, Suite 100
7                                          Santa Monica, California 90405
                                           (818) 990-1299 (telephone)
8                                          (818) 501-7852 (facsimile)
                                           dcparisi@parisihavens.com
9                                          shavens@parisihavens.com

10                                         Ethan Preston (263295)
                                           PRESTON LAW OFFICES
11                                         4054 McKinney Avenue, Suite 310
                                           Dallas, Texas 75204
12                                         (972) 564-8340 (telephone)
                                           (866) 509-1197 (facsimile)
13                                         ep@eplaw.us

14                                         Joseph H. Malley (not admitted in California)
                                           LAW OFFICES OF JOSEPH H. MALLEY P.C
15                                         1045 N. Zang Boulevard
                                           Dallas, Texas 75208
16                                         (214) 943-6100 (telephone)
                                           (214) 943-6170  (facsimile)
17                                         malleylaw@gmail.com

18                                         *Attorneys for Plaintiffs, on their own behalf, and*
                                           *behalf of all others similarly situated*

19

20

21

22

23

24

25

26

27

28

Jury Demand