| | |
|---|---|
| 1 | ELYSE D. ECHTMAN (admitted *pro hac vice*) |
| | eechtman@orrick.com |
| 2 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | 51 West 52nd Street |
| 3 | New York, New York 10019-6142 |
| | Telephone: (212) 506-5000 |
| 4 | Facsimile: (212) 506-5151 |
| 5 | CHRISTINA GUEROLA SARCHIO (admitted *pro hac vice*) |
| | csarchio@orrick.com |
| 6 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | 1152 15th Street, N.W. |
| 7 | Washington, D.C. 20005 |
| | Telephone: (202) 339-8400 |
| 8 | Facsimile: (202) 339-8500 |
| 9 | KATIE LIEBERG STOWE (STATE BAR NO. 257206) |
| | kstowe@orrick.com |
| 10 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | The Orrick Building |
| 11 | 405 Howard Street |
| | San Francisco, California 94105 |
| 12 | Telephone: 415-773-5700 |
| | Facsimile: 415-773-5759 |

Attorneys for Defendants
Talkatone, Inc., Talkatone, LLC, and Ooma, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHELLE HERNANDEZ, ASHLEY SALINAS, JOHN RAMIREZ, and ANDRE RUFUS, individuals and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>TALKATONE, INC., a Delaware corporation, TALKATONE, LLC, a Delaware limited liability company, OOMA, INC., a Delaware corporation, and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 15-cv-03703 PSG<br><br>**DEFENDANTS TALKATONE, INC., TALKATONE, LLC, AND OOMA INC.'S NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hon. Paul S. Grewal**<br><br>**Hearing Date: December 1, 2015**<br>**Time: 10:00 a.m.**<br><br>**Courtroom: 5** |

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ........................................................................................ 2
II. ALLEGATIONS OF THE COMPLAINT ........................................................................ 2
III. ARGUMENT ...................................................................................................................... 5
    A. On A Motion To Dismiss, The Court May Only Accept The Well-Pleaded And Plausible Allegations Of A Complaint As True ............................................. 5
    B. Plaintiffs Fail to State A Claim For Violation of the TCPA ................................. 6
        1. The Talkatone Application Did Not Initiate The Invitational Texts ........... 7
        2. The Human Intervention Required To Send Invitational Text Messages With The Talkatone Application Forecloses An ATDS Finding ......................................................................................................... 8
    C. Plaintiffs Allege No Basis to Hold Ooma Liable ................................................. 10
IV. CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................2, 6

*Bowoto v. Chevron Texaco Corp.*,
  312 F. Supp. 1229 (N.D. Cal. 2004) ....................................................................11

*Glauser v. GroupMe, Inc.*,
  No. C-11-2584 PJH, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015) ........................11

*Huricks v. Shopkick, Inc.*,
  No. C-14-2464 MMC, 2015 WL 5013299 (N.D. Cal. Aug. 24, 2015) ..................8

*McKenna v. WhisperText*,
  No. 5:14-cv-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ........ *passim*

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ................................................................................3

*Neilson v. Union Bank of Cal., N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................................11

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ..................................................................................7

*Seymour v. Hull & Moreland Eng'g*,
  605 F.2d 1105 (9th. Cir. 1979) ..............................................................................12

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................................2, 6

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ................................................................................6

*U.S. v. Bestfoods*,
  524 U.S. 51 (1998) ................................................................................................11

**Federal Statutes**

47 U.S.C. § 227(a)(1) ....................................................................................................7

47 U.S.C. § 227(b)(1)(A) ..............................................................................................7

47 U.S.C. § 227(b)(1)(A)(iii) ............................................................................................................7

47 U.S.C. § 227(b)(2) ........................................................................................................................8

**Rules**

Fed. R. Civ. P. 8(a)(2) ......................................................................................................................6

Fed. R. Civ. P. 12(b)(6) ..............................................................................................................1, 5

**Other Authorities**

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling & Order*, CG Docket No. 02-278, at ¶ 25 (2015) (RJN Ex. E) ..................................................................................................................8

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991, Report & Order*,
CG Docket No. 02-278, at ¶ 163 (2003) (RJN Ex. D) ...........................................................7

**NOTICE OF MOTION AND MOTION**

NOTICE IS HEREBY GIVEN that, on December 1, 2015, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Paul S. Grewal, United States Magistrate Judge for the Northern District of California, Robert F. Peckham Federal Building, 208 South 1st Street, San Jose, California, 95113, Defendants Talkatone, Inc., Talkatone, LLC, and Ooma, Inc. (collectively "Defendants") will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the Telephone Consumer Protection Act ("TCPA") complaint of plaintiffs Michelle Hernandez, Ashley Salinas, John Ramirez and Andre Rufus (collectively "Plaintiffs") (hereinafter, the "Complaint").

Defendants respectfully move this Court to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiffs' Complaint does not state a claim under the TCPA because the Talkatone application does not make or initiate the invitational text messages at issue in the Complaint and does not use an automated telephone dialing system ("ATDS") to send those text messages. In addition, Plaintiffs' Complaint should be dismissed as to Defendant Ooma, Inc., as the sole alleged basis for Ooma's liability is its status as the alleged corporate parent of the other defendants.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Request for Judicial Notice ("RJN") and accompanying exhibits, the argument of counsel, all pleadings, records, and papers on file, and such other matters that may be presented to the Court.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Plaintiffs' complaint should be dismissed for all of the same reasons that this Court recently dismissed the TCPA complaint in *McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015). In *WhisperText*, this Court ruled that the plaintiffs' fourth amended complaint failed to state a plausible TCPA claim, because (i) the Whisper application users, not WhisperText, were the initiators of the text message invitations at issue; and (ii) the Whisper application did not use an automated telephone dialing system ("ATDS") to send those text messages, as required to state a TCPA claim. Plaintiffs in this case, represented by the very same counsel who represented the plaintiffs in *WhisperText*, take issue with features of the Talkatone application that are functionally identical to the challenged *WhisperText* features. This Court should similarly dismiss Plaintiffs' TCPA claims in this action. First, the Complaint's factual allegations establish that Talkatone users, not Talkatone, are the initiators of the text message invitations at issue. Second, the Complaint's factual allegations establish that the Talkatone application does not use an ATDS to send invitational text messages.

In addition, this Court should dismiss the claims against Ooma, Inc., which is the parent company of Talkatone, LLC. Plaintiffs plead no factual basis to hold Ooma liable for its subsidiary's text messaging application.

## II. ALLEGATIONS OF THE COMPLAINT[1]

Talkatone is a smartphone application that individuals may download to a cellular phone. Compl. ¶ 21. The Talkatone App permits users to send and receive calls and texts via WiFi or a

---

[1] For purposes of this motion to dismiss, Defendants treat the well-pleaded factual allegations of the Complaint as true. Defendants do not credit any implausible or conclusory allegations, because a "court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences." *WhisperText*, 2015 WL 5264750, at *2 (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007)).

data connection without using cellular minutes or the users' monthly allotment of text messages. Compl. ¶ 21. The Talkatone application is available in the iTunes store for Apple devices, as an Android application, and on the Kindle Fire. *Id*. Users of the Talkatone application enjoy free phone calls to other Talkatone users. *Id*. Talkatone users also may text each other without cellphone data or text message charges. *Id*. Plaintiffs allege that they received illegal text messages inviting them to download the Talkatone application after contacts, Talkatone users Mr. Hernandez or Ms. Gonzalez, downloaded the Talkatone application. *Id*. at ¶¶ 33–34.

Talkatone provides its users with the option of inviting their contacts to download the application. Compl. ¶ 22. The Complaint specifically cites, and quotes from, a tutorial available on Talkatone's website explaining how the invitation function works, and the benefit to Talkatone users from having their friends use the application.[2] It states:

> Invite your Contacts to join Talkatone . . .
>
> We encourage our users to invite others to Talkatone, since Talkatone to Talkatone calls and texts are free.
>
> You can send a Talkatone invite to your contacts by following these instructions:
> On Talkatone, tap on the Contacts icon, then tap on the Contact you wish to invite.
> Here you should see the legend 'Invite to Talkatone', tap and you are done!
>
> Video Tutorial:  http://bit.do/tktninvite

*Id*.

This tutorial describes three affirmative steps that a Talkatone user takes before invitational text messages are sent to contacts on his or her smartphone. First, the user taps the "Contacts" icon. Second, the user taps on the specific Contact he wishes to invite. Third, the user taps on the legend "Invite to Talkatone." According to the tutorial, it is only after those three affirmative, volitional steps are taken by the user that an invitational message will be sent to the user's selected contact or contacts. Compl. ¶ 22.

---

[2] That tutorial is incorporated in the Complaint by reference. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

Notwithstanding the fact that the allegations in Plaintiffs' Complaint show otherwise, by citing to the Talkatone website (which is incorporated by reference into Plaintiffs' Complaint), Plaintiffs make the conclusory assertion, wholly absent of factual support, that the Talkatone application improperly "harvests" contact information from user's smartphones, without any intervention by the user. Plaintiffs further assert, again in conclusory fashion without factual basis, that Talkatone automatically sends out invitational messages to *all* of a user's contacts, as part of some sort of nefarious "growth hacking" scheme. Compl. ¶¶ 23–25, 35, 37.

These conclusory assertions on "harvesting" and "growth hacking" are implausible and should not be credited by the Court. This Court rejected *identical* "harvesting" and "growth hacking" allegations as implausible in the *WhisperText* case, and should do the same here. For example, in *WhisperText*, the plaintiffs made the following "harvesting" allegation:

> Defendants . . . <u>transmitted the above text message en masse to a list of telephone numbers that Defendants harvested from the</u> cellular phones of its customers <u>through an automated process and then immediately thereafter uploaded</u> said list instantaneously into [a third party's] <u>text messaging platform for transmission</u>.

Fourth Amended Complaint at ¶ 28, *McKenna v. WhisperText*, No. 5:14-cv-00424-PSG (N.D. Cal.) (RJN Ex. A) (underlining added). Plaintiffs make the same "harvesting" allegation, as reflected by the identical language underlined below:

> <u>Defendants transmitted the above text messages *en masse* to a list of telephone numbers that Defendants harvested from the</u> contact list on Mr. Hernandez's and/or Ms. Gonzalez's cellular phone <u>through an automated process and then immediately thereafter uploaded</u> into Defendants' <u>text messaging platform for transmission</u>.

Compl. ¶ 35 (underlining added).

Similarly, in *WhisperText*, the plaintiffs claimed that the defendants were engaged in a "growth hacking" scheme. The *WhisperText* plaintiffs explained that "[g]rowth hacking is the latest marketing industry euphemism for unauthorized advertising or spam, and frequently

involves a continuous unsolicited invitational process or 'viral loop' designed to increase adoption among consumers of the promoted product or service at an ever increasing rate." RJN Ex. A at ¶ 19.[3] The *WhisperText* plaintiffs claimed that "the Whisper marketing campaign at issue in this case is the very definition of a mobile growth hacking scheme: it involved the transmission of unsolicited text message ads by Defendants . . . sent to lists of unwitting consumers' cellular telephone numbers." *Id*. at ¶ 20. Plaintiffs here make the identical allegation against Talkatone: "The Talkatone App marketing campaign at issue in this case is the very definition of growth hacking – it involves the transmission of unsolicited invitational text message ads sent by Defendants to lists of unwitting consumers' cellular telephone numbers." Compl. ¶ 24. Defendants present a side-by-side comparison of the "harvesting" and "growth hacking" allegations in this action and the *WhisperText* action in the attached Appendix A.

In *WhisperText*, this Court rejected as implausible the allegations that the Whisper application functioned without human intervention. Instead, the Court credited the allegations in plaintiffs' complaint showing that "the Whisper App allows users to select contacts and invite those contacts by SMS text to try Whisper for themselves." *WhisperText*, 2015 WL 5264750, at *1. The same allegations rejected in *WhisperText*, which have been cut and pasted into the Complaint in this action, should be rejected as implausible here as well.

### III.  ARGUMENT

**A.  On A Motion To Dismiss, The Court May Only Accept The Well-Pleaded And Plausible Allegations Of A Complaint As True**

A motion to dismiss should be granted when a complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. Pro. 12(b)(6). In order to survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Satisfying this standard "requires more than labels

---

[3] This allegation appears, word for word, at paragraph 23 of Plaintiffs' Complaint in this action.

and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. A plaintiff's claims must be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "If a plaintiff fails to proffer 'enough facts to state a claim to relief that is plausible on its face,' the complaint may be dismissed for failure to state a claim upon which relief may be granted." *WhisperText*, 2015 WL 5264750, at *2 (quoting *Twombly*, 550 U.S. at 570).

"A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. In examining the allegations set forth in the complaint, a court need not accept as true "unwarranted deductions of fact or unreasonable inferences." *Sprewell*, 266 F.3d at 988. Moreover, courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

In this case, the only plausible allegations about the functionality of the Talkatone application from the Complaint are those taken from the tutorial on the Talkatone website. Plaintiffs' allegations about "harvesting" and "growth hacking" are contradicted by the tutorial documents referred to in the Complaint, and were lifted wholesale from a defective complaint in another action. Plaintiffs present no facts in their Complaint to support those "harvesting" and "growth hacking" assertions, making their assumptions about the operation of the application "unwarranted" and "unreasonable." Accordingly, Plaintiffs' claims cannot stand.

### B. Plaintiffs Fail to State A Claim For Violation of the TCPA

The TCPA imposes liability upon a party who initiates a text to a wireless telephone using an ATDS without prior express consent from the called party. 47 U.S.C. § 227(b)(1)(A).

Plaintiffs have no TCPA claim against Defendants, because Defendants did not initiate the text messages that the Plaintiffs received inviting them to download the Talkatone application. Those text messages were initiated by users Mr. Hernandez or Ms. Gonzalez, who made the affirmative choice to send the texts to specific contacts in their cellphone address books. In addition, Plaintiffs have no TCPA claim against Defendants, because the text messages were not sent by ATDS.

The TCPA prohibits the use of an automatic telephone dialing system ("ATDS") "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). For purposes of the TCPA, a text message is considered a "call." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991, Report & Order*, CG Docket No. 02-278 18 F.C.C. Rec'd 14014, at ¶ 165 (2003) (RJN Ex. D); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009). A plaintiff asserting a TCPA violation must satisfy two key elements. First, a plaintiff must establish that the defendant was the *initiator* of a nonconsensual text message to a cell phone. RJN Ex. D at ¶ 165. Second, a plaintiff must demonstrate that defendants employed an ATDS to make the offending call. ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In determining whether a particular device constitutes an ATDS, the operative question is whether the equipment has "the *capacity* to dial numbers without human intervention." RJN Ex. D at ¶ 132. (emphasis in original).

### 1. The Talkatone Application Did Not Initiate The Invitational Texts

Because the only facts alleged in the Complaint support a finding that the Talkatone application requires several affirmative volitional steps by a user before an invitational text message will be sent to any of the user's contacts, the application cannot be deemed under the TCPA to be an initiator of those text messages. "[A]n application that require[s] human intervention to send invitational [text] messages [is] not the 'maker or initiator' of the calls for TCPA purposes." *WhisperText*, 2015 WL 5264750, at *4.

The FCC, which is responsible for implementing the TCPA (47 U.S.C. § 227(b)(2)), has clarified that an application provider cannot be held liable under the TCPA as the initiator of a call when the application user must make a series of affirmative choices before the invitational text message is sent. In the FCC's most recent Declaratory Ruling and Order, it examined the TextMe application and determined that the application's users are responsible as the initiators of invitational text messages. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling & Order*, CG Docket No. 02-278, at ¶ 25 (2015) (RJN Ex. E).

For the user of the TextMe application to send an invitational text message to any contacts in his cellphone, he first must: "(1) tap a button that reads 'invite your friends'; (2) choose whether to invite all their friends or individually select contacts; and (3) choose to send the invitational message by selecting another button." RJN Ex. E at ¶ 37. Under these circumstances, the FCC determined that TextMe could not be considered to have "initiated" the text message for purposes of TCPA liability. *Id.*; *see also Huricks v. Shopkick, Inc.*, No. C-14-2464 MMC, 2015 WL 5013299, at *3 (N.D. Cal. Aug. 24, 2015) (relying on the FCC's 2015 TCPA Declaratory Ruling and Order and granting summary judgment to Shopkick on the basis

that the Shopkick invitational text message process was "indistinguishable" from the TextMe process).

The only facts cited in the Complaint showing how the Talkatone application works establish that, like in TextMe, *users* are the ones that initiate invitational texts. As set forth in the Talkatone tutorial quoted in the Complaint, in order to invite contacts, the Talkatone user (1) taps on "Contacts" within the Talkatone application; (2) taps on a Contact; and (3) taps on the Invite Contacts button. Compl. ¶ 22 (citing RJN Exs. B and C).[4] For the Court's convenience, we have embedded the Talkatone video tutorial, incorporated into Plaintiffs' complaint by reference, providing instructions to users as to how to invite their contacts. RJN Ex. B. The Court may access this video by clicking below.



---

[4] As discussed above, for purposes of this motion to dismiss, Defendants treat the well-pleaded factual allegations of the Complaint as true.

- 9 -

DEFENDANTS' MOTION TO DISMISS
15-CV-3703 PSG

Because the Complaint does not set forth facts showing that it is *Talkatone* who initiates the text messages, Plaintiffs' TCPA claim fails as a matter of law.

### 2. The Human Intervention Required To Send Invitational Text Messages With The Talkatone Application Forecloses An ATDS Finding

The human intervention required for an invitational text message to be sent to a Talkatone user's contacts also establishes that the text messages are not sent by an ATDS, and that Plaintiffs' TCPA claims must fail as a matter of law. The hallmark of an ATDS is that it operates without human intervention. *See* RJN Ex. D at ¶ 133 ("The basic function of [an ATDS is]…the *capacity* to dial numbers without human intervention.") (emphasis original). The only plausible pleadings about the operation of the Talkatone application in this case show that the application requires several steps of human intervention before any invitational texts might be sent.

"[W]here an application sends SMS invitations only at the user's affirmative direction, the action taken is with human intervention, meaning that the equipment at issue is not an ATDS." *WhisperText*, 2015 WL 5264750, at *4. In the *WhisperText* case, this Court found that the affirmative steps of human intervention required by the Whisper application user before any invitational text messages were sent preclude a claim that the application uses an ATDS: Applications which send text invitations "only at the user's affirmative direction foreclose any plausibility that" the messages are sent "using an ATDS, without human intervention." *Id*. at *3 (dismissing the plaintiffs' fourth amended complaint with prejudice).[5]

---

[5] In the FCC's most recent Declaratory Ruling and Order, it rejected the position that equipment must have the *present* capacity to function as an ATDS, and ruled that it is sufficient if the equipment has the *potential* capacity. RJN Ex. E at ¶ 19. That Ruling predates the *WhisperText* decision and should not have any impact here on the "human intervention" element of Plaintiffs' ATDS claim. Nonetheless, ACA International recently filed a petition with the D.C. Circuit seeking review of that portion of the FCC's Ruling. The ACA argues that this holding constitutes an unwarranted expansion of the types of equipment that fall within the definition of an ATDS and that the term "capacity," as used in the TCPA, must mean present capacity.

In yet another case in this district asserting TCPA claims related to invitational text messages, *Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111, at *7 (N.D. Cal. Feb. 4, 2015), the court granted summary judgment for failure to demonstrate use of an ATDS. In the *GroupMe* matter, the plaintiff could not "raise a triable issue of fact as to whether defendant's texting equipment had the capacity to dial numbers without human intervention, as required to be considered an 'autodialer' for TCPA purposes." *Id*. The court noted that the GroupMe "Welcome Texts" at issue "were triggered when 'GroupMe obtained the telephone numbers of the newly added group members'…and [plaintiff] ignores the fact that GroupMe obtained those numbers through the actions of the group's creator. Thus, the Welcome Texts [that plaintiffs complained about] were sent to plaintiff as a direct response to the intervention of…the "Poker" group creator." *Id*.

In light of the fact that the Talkatone application requires human intervention for invitational text messages to be sent to a user's contacts, just like in the WhisperText and GroupMe cases, the Plaintiffs' TCPA claims in this case should likewise be dismissed for failure to allege use of an ATDS.

### C. Plaintiffs Allege No Basis to Hold Ooma Liable

The scant references to Ooma in the Complaint are insufficient to state a claim against this parent company. Plaintiffs plead only that Ooma operates as a telecommunications company and that it acquired the Talkatone defendants in 2014. "It is a general principle of corporate law deeply ingrained in our legal system that a corporation is not liable for the acts of its subsidiaries." *U.S. v. Bestfoods*, 524 U.S. 51, 68 (1998); *see also Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003) ("[A] parent company is presumed to have an existence separate from its subsidiaries."). Courts will hold a parent corporation liable for its subsidiaries' actions "[o]nly in unusual circumstances." *Bowoto v. Chevron Texaco Corp.*, 312 F.

Supp. 1229, 1234 (N.D. Cal. 2004). These circumstances include when "there is such a unity of interest and ownership between the corporation and the [parent company or] shareholder that the two no longer exist as separate entities," "failure to disregard the corporation would result in fraud or injustice," or the corporate form was created to evade liability. *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1111 (9th Cir. 1979). No facts supporting any theory for piercing the corporate veil can be found in Plaintiffs' Complaint, and the claims against Ooma should be dismissed.

## IV. CONCLUSION

For all of the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted, and that the dismissal be granted with prejudice. There is no utility in granting Plaintiffs leave to amend, because Plaintiffs have no plausible basis to allege that the Talkatone application sends invitational text messages without significant human intervention by the application users. The allegations in this case were parroted from a complaint dismissed with prejudice in another case, and should likewise be dismissed with finality.

Dated: October 23, 2015

ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005

By: */s/ Christina Guerola Sarchio*
CHRISTINA GUEROLA SARCHIO
(admitted *pro hac vice*)
Attorneys for Defendants Talkatone, Inc., Talkatone, LLC, and Ooma, Inc

# APPENDIX A:
# Comparison of Fourth Amended Complaint in *McKenna v. WhisperText* to Plaintiffs' Complaint in This Action

| **WhisperText Growth Hacking Allegations (Fourth Amended Complaint, RJN Ex. A)** | **Plaintiffs' Growth Hacking Allegations Against Talkatone** |
|---|---|
| 19. Growth hacking is the latest marketing industry euphemism for unauthorized advertising or spam, and frequently involves a continuous unsolicited invitational process or "viral loop" designed to increase adoption among consumers of the promoted product or service at an ever increasing rate.[2]<br><br>FN2: *See, e.g.*, http://valleywag.gawker.com/path-is-racking-up-a-500-000-per-month-spam-bill-589105276. | 23. . . . . Growth hacking is the latest marketing industry euphemism for unauthorized advertising or spam, and frequently involves a continuous unsolicited invitational process or "viral loop" designed to increase adoption among consumers of the promoted product or service at an ever-increasing rate. *See, e.g.*, ValleyWag, *Path Is Racking Up a $500,000 Per Month Spam Bill*, at http://valleywag.gawker.com/path-is-racking-up-a-500-000-per-month-spam-bill-589105276. |
| 20. . . . . Indeed, the Whisper marketing campaign at issue in this case is the very definition of a mobile growth hacking scheme: it involved the transmission of unsolicited invitational text message ads by Defendants utilizing Twilio long codes and sent to lists of unwitting consumers' cellular telephone numbers that were uploaded by Defendants, sent to Twilio's API platform via an automated process over a secure internet connection, and then stored by Twilio prior to transmission as part of a process lacking any human intervention. . . . | 24. The Talkatone App marketing campaign at issue in this case is the very definition of growth hacking—it involves the transmission of unsolicited invitational text message ads sent by Defendants to lists of unwitting consumers' cellular telephone numbers that Defendants obtained from the contact lists in their users' cellular telephones and sent to Defendants' API platform via an automated process, and then stored by Defendants prior to transmission as part of a process lacking any human intervention. . . . |
| 21. Defendants' hope and expectation for this scheme is consistent with the hope and expectation of all viral spammers: that at least some of the recipients of its unsolicited invitational text message advertisement respond favorably and agree to download the Whisper app and then repeat this process, thereby growing Whisper's user base exponentially. | 24. . . . . Defendants' hope and expectation for this scheme is the same hope and expectation of all viral spammers: that at least some of the recipients of their unsolicited invitational text message advertisement respond favorably and agree to download the Talkatone App and then repeat this process, thereby growing Defendants' user base exponentially. |
| 24. . . . . As such, when the Defendants perpetuated the text message growth hacking scheme at issue in this case through Twilio, Defendants did so utilizing the same text messaging platform that has been repeatedly | 25. When the Defendants perpetuated the text message growth hacking scheme at issue in this case, they did so utilizing the same text messaging platform that has been repeatedly commandeered by other unscrupulous |

| WhisperText Contact Harvesting Allegations (Fourth Amended Complaint, RJN Ex. A) | Plaintiffs' Contact Harvesting Allegations Against Talkatone |
|---|---|
| commandeered by other unscrupulous Twilio customers to conduct traditional mass spamming campaigns of the variety the TCPA had long ago proscribed.[4]<br><br>FN4: *See, e.g.*, In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 F.C.C. Rcd 559, 566-67 (2008) ("2008 Order"); In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 F.C.C. Rcd 15391, 15392 n.5 (2012). | Defendants to conduct traditional mass spamming campaigns of the variety the TCPA has consistently proscribed for years. *See, e.g.*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, ¶¶ 107-22 (July 10, 2015) ("2015 Order"); *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C. Rcd 15391, 15392 n.5 (2012); *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd 559, 566-67 (2008) ("2008 Order"). |
| 25. Unlike more conventional advertisements, wireless spam invades privacy and can actually cost its recipients money, because cell phone users like Plaintiff must pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized. | 26. Unlike more conventional advertisements, wireless spam invades privacy and can actually cost its recipients money, because many cellular phone users must pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized. |

| **WhisperText Contact Harvesting Allegations (Fourth Amended Complaint, RJN Ex. A)** | **Plaintiffs' Contact Harvesting Allegations Against Talkatone** |
|---|---|
| 28. Defendants, in collaboration with the technology of its agent, Twilio, transmitted the above text messages en masse to a list of telephone numbers that Defendants harvested from the cellular phones of its customers through an automated process and then immediately thereafter uploaded said list instantaneously into Twilio's text messaging platform for transmission. | 35. Defendants transmitted the above text messages *en masse* to a list of telephone numbers that Defendants harvested from the contact list in Mr. Hernandez's and/or Ms. Gonzalez's cellular phone through an automated process and then immediately thereafter uploaded into Defendants' text messaging platform for transmission. |
| 29. After Defendants' app automatically uploaded the list of phone numbers, the Whisper app then provided that list – instantaneously and without any human intervention – to Twilio in order to cause the identical text messages to be sent to all phone numbers on such list from one or more unique | 32. Each time after Mr. Hernandez signed up with Talkatone, Defendants' app automatically uploaded the list of Mr. Hernandez's or Ms. Gonzalez's contact mobile phone numbers – instantaneously and without any human intervention – in order to cause text messages to be sent to phone numbers on such lists. On |

| | |
|---|---|
| long codes owned and operated by Twilio, including but not limited to, 16502412157. | information and belief, such acts occurred to other subscribers of Defendant's Talkatone App. |
| 30. Defendants' app, in collaboration with Twilio's API platform, is intended to, and does, automatically generate text messages to send to mobile devices using an identical and internally preprogrammed text message script . . . . | 36. Defendants' app, in collaboration with Defendants' API platform, is intended to, and does, automatically generate text messages to send to mobile devices using an identical and internally preprogrammed text message script. |
| 31. The process utilized to transmit the subject text messages was preprogrammed by Twilio to automatically accept Defendants' provided list of phone numbers and then to transmit Defendants' invitational text message to each phone number on such list without human intervention. The invitational text messages are not typed by a human and are not sent manually from one human to another human. | 37. The process utilized to transmit the subject text messages was preprogrammed by Defendants to automatically accept Defendants' provided list of phone numbers and then to send Defendants' invitational text message to each phone number on such list without human intervention. The invitational text messages are not typed by a human and are not sent manually from one human to another human. |
| 32. Defendants' customers are in no way involved with the physical transfer of telephone numbers to Defendants' lists, are in no way involved with the transmission of the text messages, are not involved in the drafting of the text messages, do not see the text messages before they are sent, and do not know when they are sent. The entire process of sending the invitational text messages is automated and performed without any human intervention as part of a technically complex and fully automated system involving Defendants' system and Twilio's API platform. | 41. Plaintiffs were in no way involved with the physical transfer of telephone numbers to Defendants' list, were in no way involved with the transmission of the text messages, were not involved in the drafting of the text messages, do not see the text messages before they are sent, and do not know when they are sent. The entire process of sending the invitational text messages is automated and performed without any human intervention as part of a technically complex and fully automated system involving Defendants' system. |